The next matter, number 25-1330, Kokoma v. Todd Blanche. At this time, would counsel for the petitioner please introduce herself on the record to begin. May it please the court, attorney Joanna Golding for the petitioner. I request three minutes for rebuttal. Mr. Kokoma faced persecution and detention that were centrally motivated by religious animus and xenophobia. Mr. Kokoma credibly testified that he was summoned by the police for two reasons. One, that they wished to investigate Mr. Kokoma in relation to a murder of his friend. And two, that they wished to investigate whether he was a disciple of the Luz do Mundo church. The judge, having found Mr. Kokoma credible in his testimony, then erred in failing to credit the testimony that, in fact, he was being investigated based on his involvement with the church. Mr. Kokoma was then reported to the police station where he was accused of being a disciple of the church. He was detained and beaten for three days. During that time, racial slurs were used against him. Were Mr. Kokoma only a suspect in a criminal investigation, he would not have been detained and beaten for these three days. These persecutory actions were on account of religion and his status as a foreigner. So the parties, or the BIA and the IJ, at least nod at the central reason standard. Is your position that, okay, they nodded at it, but under substantial evidence review in this case, all the evidence points to it was at least one central reason, was religious belief? Yes, certainly, and I would also argue that the judge and the board committed legal error in failing to consider his credible testimony. After crediting him as a credible witness, the judge then discredited and didn't analyze a key and simple fact of his case. Councilor, why would we need to look at the immigration judge's decision in the way that you said? Because I read the decision and the judge says, I recognize that he's bringing a claim based on imputed religion. But I think he hasn't met his burden to show that was the reason or essential reason for why he was being persecuted or being brought into the jail. And said, I think they were just motivated by the murder allegations. And so, whether we look at it as a legal error or under the substantial evidence standard, I guess it would be helpful. What do you think is your best sort of evidence or part of the decision you would point to, to show that if you want to frame it as a legal error, evidence was actually ignored, or if you're under substantial evidence that the record actually compels a contrary conclusion, because I think all the parts of the analysis are there. And the IJ just reached a decision against your client, which of course he can petition on. But why exactly do you think there was either a legal error or the record compelled a contrary conclusion? What would you really focus in on? Certainly I would focus that the judge completely disregarded compelling country condition evidence in the record. Country condition evidence, including reports by human rights organizations, described what happened in Angola as a genocidal massacre. The president of Angola stated his intention to dismantle the Luz do Mundo church, given that they were a threat to peace and national unity. Other human rights reports document that, in fact, the government of Angola targeted and was intolerant of smaller religious sects, such as the Luz do Mundo church. Finally, the State Department itself corroborates this same information and describes the conditions that happened at the Luz do Mundo church. Describing that the government of Angola was intolerant to religious minorities. Describing that security forces conducted inhumane actions. And further, that 44 churches were closed in the country of Angola in that year itself. For the judge to completely discredit and to not refer or analyze that evidence at all is a legal error that can be remedied by vacating that decision. Council, so if I could just point you, I think it's page 60 of the addendum that you attached. So the IJ says, the IJ is looking at the religious belief issue and says the court finds that the police are identifying the respondent as a disciple of the church as a way of identifying him as being in the vicinity of what happened to Carlos. And that Carlos disappeared or was possibly murdered outside of the church. The court does not find that any imputed religious belief was one central reason why he was harmed, etc. So when I read that, I'm trying to think of how to square that with your argument. I mean, it seems like the IJ is looking squarely at this. She's thinking about it. She's recognizing the discrimination, but she's just concluding on this record. I just don't, I haven't been convinced. Well, with regard to identifying the Mr. Cocoma as having been at the location and disciple of the Luz do Mundo church. I would say that that statement could also just be that he's been placed at the location of the church. The fact that they mentioned the church at all is significant because that builds, that supports the conclusion that racial animus was involved or religious animus was involved. They could have identified him in many other ways. They could have identified Mr. Cocoma as the colleague of the individual who was murdered. But they pointed specifically that he was involved with this church, which in part was a central reason for their persecution of Mr. Cocoma. Council, could you address the firm resettlement issue? Because would you agree if there's firm resettlement, then everything pertaining to Angola does not go in the equation anymore? And that would be an independent ground for denying relief. Yes, with regard to firm resettlement, Mr. Cocoma is eligible for an exception to firm resettlement based on the fact that he was substantially and consciously restricted in his living in Brazil. The board assessed that Mr. Cocoma worked as a barber. The board failed to assess that Mr. Cocoma then credibly testified that he in fact worked as a barber, but that his clients refused to pay him. That his clients were criminals when he went to the police to request that they investigate, that the police refused to help someone in his position, that the police refused to help foreigners in Brazil. Given this analysis, the board below erred in considering factors related to firm resettlement. Another example, the board referred to his membership in the group AMIC as a favorable factor in firm resettlement. In reality, the AMIC group itself was a group of foreigners. The judge and the board completely disregarded a declaration in the evidence, which explained that the AMIC group was targeted. Once they were known to be a group of foreigners, they were then targeted, that the police refused to help them. Did this resettlement issue hinge on whether the government was willing to or able to assist him in his complaints about the drug dealers? Yes, I would. So there's some evidence, at least, that at least they were arresting some drug dealers in his area. And I know he testifies that they didn't do anything about his particular complaints, but that seems like a dispute. The police are doing some stuff. He says they're not particularly pertinent to his particular concerns, but obviously he has a motive to say that. And a judge could, I think, reasonably say there's some evidence here that the police are responsive. And I have to make a determination about that, and I conclude that they are. What's wrong with that, as how the resettlement bar problem was resolved? I mean, there are other errors in the board's analysis, the judge's analysis, where the judge also failed to consider country condition evidence. He did describe his circumstance and other circumstances of police investigating. But ultimately, there are also country condition evidence which show pervasive racism against foreigners in Brazil. On the other hand, in some ways, it seemed like he was successfully had a business and was doing well in Brazil, and then there were problems. I appreciate that, but it just seems like a muddled picture on this. And that seems to be the difficulty for your client on the resettlement bar problem. I would say that he, the police may have investigated, but in the specific circumstances of Mr. Kocoma, when the police became involved, that's actually when the threats against him escalated. He was seen to be a police informant because he had contact with the police, and therefore, threats escalated and he had to flee the country. Similarly, a friend of Mr. Kocoma's went through the same thing. He threatened that he would report actions to the police, and he was found murdered. And that's all bad, no doubt, but I guess my question is, and I've never had a resettlement bar case before, does the same analysis apply as to it has to be the government who's doing it? Somebody may think he's an informant and threaten him, and that's bad. But that may not be a basis for asylum because the government didn't do it. Is that the same thinking here? It's an issue of first review for this court. The matter of KSC holds or states in dicta that it must be government actors that are persecuting, harassing, or discriminating against a foreign national. However, I would urge this court to consider the more sensible approach adopted in the Ninth Circuit, in the Aiden case, which is that when a private actor engages in discrimination and harassment, substantially restricting a foreigner, that that action can be considered if the government authorities are unwilling or unable to prevent that action. In this case, it's clear that the police were unwilling to prevent the persecution by criminals. The police clearly stated to Mr. Kakoma that they did not want to help him as a foreigner. And for this reason, he was subject to threats and escalating threats at the hands of criminals in Brazil, forcing him to relocate back to the United States. Thank you, counsel. Would counsel for a respondent please introduce himself on the record if you can. May it please the court, my name is Andrew O'Malley, I represent the Attorney General. I want to start with the firm resettlement issue. Perhaps, I was going to ask you to start. Yes, Your Honor, absolutely. First, to sort of set the table here, because I think some language from the new regulatory language creeps into the reply brief a little bit here. There is a new regulation that has been issued in, I think it was December of 2020, that is enjoined by the Pangea litigation, so we're still operating on the 2020. And there's no mention of persecution in the regulatory language that is operable at this point. And yes, the firm resettlement bar does require government action in terms of substantially restricting the conditions of living on the asylum applicant. That is the plain language of the regulation. That has been the plain language of the regulation for years. In 1982, shortly after it was promulgated in the more or less in a decision, pardon me, matter of Portales, where the individual is complaining about restrictions on employment. Said yes, but those restrictions are not done by the government. The Fourth Circuit identified this issue in 1999 in Mussie, where there was actual persecution and it said horrible persecution. And they said, but that was not done by the government. That is not what we're looking at here, and it's not. We're not looking at whether this individual suffered persecution in the country of nationality, which isn't necessary for asylum, it's the bar for resettlement in another country. And- No, go ahead. You've actually suggested that we not reach this issue, correct? You think we should, because it's an issue of first impression, you think that we should bypass it and just resolve the case? Assuming, of course, that you want us to rule in your favor, you think we should resolve the case on nexus grounds, is that right? I think you certainly can. I think you, also, I don't think you need to deal with it specifically because the government was willing to control in this case, right? Even if you went that direction, the government in Brazil arrested people, arrested the person that attacked the friend, or presumably attacked the friend who disappeared. But yes, if you reach the nexus issue, and you determine that substantial evidence to support the agency's determination on nexus, you don't have to get into firm resettlement at all. But if we do decide this issue, would you agree it's a decision on the firm resettlement, it's supported by substantial evidence as well. There's credibility, weight of the evidence. Council sees it one way, you might see it the other way, but when there's that deference we give to the agency, you would still prevail. That's correct, and I don't mean to make counsel's argument for her, but I believe that the firm resettlement bar does not apply to withholding. So it doesn't apply to what you said? It does not apply to withholding of removal. So if you found that the firm resettlement bar applies, then it bars asylum, it doesn't bar withholding of removal. So you'd still have to reach the nexus determination. That's why you're arguing that we should just move straight to nexus, because you think you prevail. Yeah, I think so. Can I ask you to address the petitioner's arguments that there wasn't enough attention to country conditions evidence here, and I think one of the other arguments they made, he made in his brief, is that the way the police behaved, whether you look at it as legal error or the evidence compelled the contrary conclusion, that the way that police behaved is just completely inconsistent with the murder investigation. In other words, according to the petitioner, and you can tell me why you disagree, they bring him in, they keep him for several days, they beat him. But then there is no actual follow up on a murder investigation, which in his view just suggests that's not at all what bringing him into the police station was about. It was really about persecuting him because of this imputed religious belief. Can you respond to that? Absolutely, Your Honor. There was no follow up on anything. They didn't ask him any questions during the time, the three days that he was- But doesn't that actually support the petitioner's argument? I mean, if you suspect somebody of murder, wouldn't you be questioning them? Sure, I think that it goes to the, you have to go to the totality of his testimony, which is that the family of the individual that he purportedly murdered, right? His friend who they thought murdered him, they reported him to the police. They said, he murdered our son, you need to go after him and get him. And the police went and said this convocation- But that divorces it from the context. The context of the murder is at the church that's the subject of, it seems like government persecution of some kind. And so that's where it happens. And then they take him in, and instead of questioning about the murder, as far as, at least I understand the brief, there's violence purported against him. And there are comments made to him that suggest prejudice against that religious group. And yet, and then no questioning about the murder. There was no comments made to him suggesting prejudice against that religious group. There were comments made to him, shut up langa, I think it was, which is an ethnicity thing. It's not the religion. There was nothing said about it.  And his testimony was, they took me in because they thought I killed Carlos. The family was persecuting me because they thought I killed Carlos. That's why they told the police to come get me. That's why the police came and got me. In fact, I think he said at one point that was the only reason. And then he tries to loop it back into the religious persecution. And I think it goes to what you said earlier, which is a lot of this testimony is just muddled. It's a muddled claim. He's trying to bring things back to the protected grounds that are protected under the INA. So religion, ethnicity, but there's really nothing there. There's no testimony that links those two together. And that's what the immigration judge is getting at on page 60, I think, which is where he said, she reviewed the evidence and said, I see what you're saying here. There is the statement in the convocation or the summons to the police station that says you are a member of this church. But that's just placing you at the position, or at the place, where this individual was meant to be killed. And that's why they brought you in. I think that's based on all of the testimony that you presented, that this family was trying to get him because they thought that he killed his son. And that's it. And that is- So how does the IJ's version of the facts make sense here? Because the IJ says, my view is you were brought in because of the murder allegation and the police want to investigate it. But then when he gets brought in, there is no investigation. He's just beaten. So how do we, I'm just struggling to understand then what were the police doing? How does this make sense of what actually occurred that the parties don't dispute? Because everybody agrees, right, that he was brought in and in fact he was beaten. You're not contesting that. No, no, he was found credible. That's his version of events and that's what happened as far as this decision is concerned. But I think that goes with, again, the idea that he's telling us that this family was persecuting him, that they got the police to go out and get him. And that there was nothing said to him about religion, there was nothing said to him about the murder. They were just harassing him essentially. Because then he paid a bribe and he was able to leave. And it's just a payback, I guess, for the murder. It doesn't really add up to any sort of persecution on account of a protected ground. It's too muddled, there's nothing really there. And the immigration judge made this determination based on the evidence, not just what was said in the summons, not just what happened at the police station, but his testimony about what the family was trying to do to get him back for the murder. And again- But then what is the police doing in the government's view? Again, I'm just trying to make sense of the immigration judge's decision. What was the purpose of the police bringing him in? Is it just corruption? I don't think we know. And I don't think his answers tell us anything about that. And I think it's well within the immigration judge's reasoning to say this is what I think happened based on all of the evidence. And that is a determination that's reviewed for substantial evidence. And there's nothing in the record that compels the contrary conclusion. It's a reasonable interpretation of the evidence based on his testimony, which is really just trying to bring things back to religion with no real, nothing really to latch onto. Can I ask just a factual question?  Just very quickly, there was some dispute about the expiration date of the residency card. Can you just resolve that quickly and give us the correct record site for that? First of all, that's a matter that's been waived, right? They don't, the petitioner doesn't get into, it wasn't exhausted and it was waived. There's no issue here as to whether a firm resettlement happened. It's just whether one of the exceptions applies, right? But I will say, with respect to the card. Sorry, I wrote this down. So the residency card on page 249 says that it's validity, and it has a date 1-12-2030. But it also says residency valid until indeterminate, or indefinite, or indeterminata. So I don't know if that's a, you have to renew your card, but the actual term of the residency just says indeterminate. Anything else, counsel? Because substantial evidence both supports both findings, we ask that the court deny the petition for renewal. Thank you. Let's hear rebuttal. Three minutes. Please reintroduce yourself on the record to begin. Attorney Joanna Golding for petitioner Mr. Kokoma. The opposing counsel characterizes that this testimony by Mr. Kokoma was muddled testimony. And that it's not clear that religion was at least one central motivation for the persecutory actions against him. I would urge the court to consider that any mixed motive analysis is necessarily complex. And that even though it's difficult to disentangle all the motivations, that Mr. Kokoma has clearly shown that one central reason for the persecution was his religion. I would also urge the court- So what, you said country conditions because it was general conditions that were adverse to the religion. That's a point, I follow it. What else? What about they didn't question him about the murder? Yes. What else? Was there any actual statement about his religion? No. They did not question him about anything, as your Honor has pointed out. And they didn't use any religious slurs. There was no- The only comment made was about his ethnicity. They made an ethnic slur as a foreigner. But those are certainly related in that he is seen as a member of a smaller religious sect. But it wasn't an overtly religious comment. It was not overtly. And they let him leave based on a bribe? Yes. That's what he testified to. And they took him in at the family's, sort of, turning him in, so to speak. I think at the outset it's clear that there's a personal dispute here. And there is an investigation. But ultimately, the persecutory actions that followed were on account of his minority status and his involvement with the church. It was just a mere- But how do you know? It's not because they could get a bribe out of him if they beat him sufficiently. And they could get a bribe out of him, and that's why they did it. I mean, that certainly could also be another motivation by the police. But in this analysis, it just has to show, we just have to show that at least one central reason was the protected ground. There can be pecuniary interests and bribes that always take place. But that does not preclude that the other nexus on account of a protected ground can be considered. There can be multiple cognizable nexuses, multiple grounds, multiple motivations for persecution. Counsel, can I ask you just two quick questions? In terms of the cat claim, did your client pursue a cat claim in his briefing to the BIA? Because the government says it's not exhaustive because it was not pursued in briefing to the BIA. It was not in briefing to the BIA. I would argue that this court can consider the cat claim. Where the evidence has been presented on the record related to a cat claim, it's substantially the same evidence that the judge heard. I would argue that- Doesn't our case law say that if it's not re-urged to the BIA, it's an error, that it's not exhausted? But yes, however, you can make an exception. And I would argue that in this important circumstance where the matter is removal to another country, that the court can make an exception to that jurisdictional issue. And then I just had one other question I wanted to ask you because you pointed out the country conditions evidence. And there on page 53 of the addendum, the IJ says, which many of the IJ decisions include this language, that the evidence, whether or not specifically mentioned, has been considered and given the weight deemed appropriate by the court. And it lists the documentary exhibits one through five. Were the country conditions in exhibits one through five? Do you know? And we can check if you're not- I believe they would have been. Okay. And I guess my question to you is, if they were, I think we have case law that says when an IJ includes language like this, we do give the IJ the benefit of the doubt, for lack of a better word, that the exhibit was considered. So I'm just wondering if you want to respond to that. Yeah. All of the evidence was filed in one submission, and so it would have been considered by the IJ collectively. The IJ labels evidence as it comes in in groups. So given the IJ's statement that she did consider it, how would you like to respond? Sure. I think that the IJ's analysis, you know, she pays lip service to having considered that. But she does not properly analyze those facts. Those facts are completely disregarded, and those facts would compel. They show substantial evidence of religious animus and would compel a contrary finding. So I would ask that the board, that this decision be vacated and remanded to the court. In addition, it should be remanded to the court, as my counsel alluded to or explained. This matter, if nexus is determined, the case should be remanded back to the judge in order to consider whether Mr. Kokoma is eligible for relief in the form of withholding of removal. I have one question just on withholding of removal. Is the standard for withholding of removal the same central, one central reason in your view, or is it a reason? The standard is that it would be one central reason. And then withholding also considers fear of future harm. Anything else? Okay, thank you. Thank you. Thank you, counsel. That concludes argument in this case. Take a five-minute recess.